IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM CUTHBERTSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:10-CV-2107-D |
| VS. | § | |
| | § | |
| AMERICAN FEDERATION OF | § | |
| GOVERNMENT EMPLOYEES, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by a terminated employee alleging a racially and sexually hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the former employer moves for summary judgment. For the reasons that follow, the court grants the motion as to plaintiff's hostile work environment claims and denies the motion as to his retaliation claim.

I

This is an action by plaintiff William Cuthbertson ("Cuthbertson") against his former employer, American Federation of Government Employees ("AFGE"), alleging claims under Title VII for racial and sexual harassment and retaliation.[1] AFGE hired Cuthbertson in

---

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to Cuthbertson as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, L.L.C.*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

February 2009 as an organizer for potential union members in Texas. Specifically, AFGE hired Cuthbertson to recruit Transportation Security Administration ("TSA") workers at Dallas airports to join the union. Cuthbertson's direct supervisor, Sharon Pinnock ("Pinnock"), was based in Washington, D.C. Pinnock assigned Maria DeLeon ("DeLeon") to be Cuthbertson's mentor.

Shortly after Cuthbertson became employed, DeLeon began making racially and sexually offensive comments in Cuthbertson's presence, some of which were directed at him. Cuthbertson eventually asked her to stop making offensive comments, but although DeLeon agreed to stop, her comments continued. In March 2009 Cuthbertson emailed Bill Lyons ("Lyons"), believing him to be his supervisor, to complain about DeLeon's conduct. Cuthbertson told Lyons that DeLeon was directing discriminatory comments at him and others and that she had physically threatened him. He also stated that he "might need a[] [Human Resources] person or some type of representation." P. App. 6. Lyons informed Pinnock of Cuthbertson's complaints about DeLeon. During this same period, Lyons informed Pinnock that DeLeon had also complained to him that Cuthbertson was disrespecting her authority. Two days later, Cuthbertson sent another email to Lyons, on which Pinnock was copied, asking whom he should contact to report DeLeon's "harassment, discrimination, and intimidation." P. App. 8.

Pinnock traveled from Washington, D.C. to Dallas to meet with Cuthbertson and DeLeon on April 2, 2009. Pinnock and DeLeon met privately before they both met with Cuthbertson. Pinnock began the meeting with Cuthbertson and DeLeon by complimenting

Cuthbertson's work and encouraging him by stating that he "had a future with the union." P. App. 2. Cuthbertson then informed Pinnock that DeLeon was making racist and sexist comments in front of Cuthbertson and other workers. DeLeon denied making some of the comments and said she was only joking when she made other statements. Pinnock informed Cuthbertson that it was part of his job to get along with DeLeon and that he would not make it at the union if these types of comments bothered him because that is the way they talked in their organization. Cuthbertson felt threatened and intimidated by Pinnock's comments because he inferred that making further complaints about DeLeon would "get [him] in trouble." P. App. 3.

On April 16, 2009 Cuthbertson and DeLeon got into an argument during a union campaign at an airport. After arguing for five minutes, Cuthbertson left the airport. He emailed Pinnock asking to file a complaint against DeLeon. Before she received Cuthbertson's email, Pinnock got a call from DeLeon. Pinnock's assistant informed her that DeLeon told her that she feared for her safety because Cuthbertson threatened her life. That same day, Pinnock decided to terminate Cuthbertson's employment, and his final day of employment was April 30, 2009.

Following his termination, Cuthbertson filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging a hostile work environment and retaliation for opposing discriminatory treatment. The EEOC issued a determination letter stating that there was reasonable cause to believe that AFGE had retaliated against Cuthbertson's protected activity. He subsequently filed suit in this court, and the court granted in part AFGE's

motion to dismiss. *Cuthbertson v. Am. Fed'n of Gov't Emps.*, 2011 WL 1427634, at *2 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.). AFGE now moves for summary judgment on Cuthbertson's remaining claims under Title VII for a sexually and racially hostile work environment and retaliation. Cuthbertson opposes the motion.

II

Because Cuthbertson will bear the burden of proof on his claims at trial, AFGE can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support Cuthbertson's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once AFGE does so, Cuthbertson must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Cuthbertson's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Cuthbertson's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if Cuthbertson fails to meet this burden. *See Little*, 37 F.3d at 1076.

III

The court turns first to Cuthbertson's racially and sexually hostile work environment claims.[2]

A

To prove a hostile work claim based on race or sex, Cuthbertson must establish the following:

> (1) [he] belongs to a protected group; (2) [he] was subject to unwelcome [racial or] sexual harassment; (3) The harassment complained of was based upon [race or] sex; [and] (4) The harassment complained of affected a "term, condition or privilege of employment," *i.e.*, the [racial or] sexual harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.

*Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999) (on rehearing) (citing *Jones v. Flagship Int'l*, 793 F.2d 714, 719-720 (5th Cir. 1986)).[3] Harassment "affect[s] a term,

---

[2] Cuthbertson alleges that DeLeon made discriminatory comments about his age. He does not mention an age discrimination claim in his brief. Because it is unclear whether Cuthbertson intends to make such a claim, the court does not construe the allegations as attempting to assert an age discrimination claim.

[3] "In some circumstances, a plaintiff asserting a claim of hostile work environment must also prove a fifth element: that 'the employer knew or should have known of the harassment in question and failed to take prompt remedial action.'" *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *8 n.8 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001). "But where . . . the harassment is allegedly committed by a supervisor with immediate (or successively higher) authority over the harassment victim, the plaintiff employee needs to satisfy only the first four of the elements listed above." *Id.* (citations and internal quotation marks omitted); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). Because it does not affect the

condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, [if] it [is] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks and citations omitted). A court must consider "all of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotation marks and citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)) (internal quotation marks omitted). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (on rehearing) (quoting *Faragher*, 524 U.S. at 787).

---

court's decision on Cuthbertson's hostile work environment claim, the court will assume *arguendo* that the alleged harassment was committed by a supervisor with immediate (or successively higher) authority over him.

B

AFGE argues that it is entitled to summary judgment on Cuthbertson's race-based hostile work environment claim because Cuthbertson's evidence does not establish that the harassment was severe or pervasive enough to create a hostile work environment. Cuthbertson responds that the evidence is sufficient to demonstrate that the harassment was both severe and pervasive.

To demonstrate a racially hostile work environment toward Caucasians, Cuthbertson presents evidence of three derogatory statements made by DeLeon that were directed at him or his Caucasian race:[4] DeLeon referred to him as a "young white boy," P. App. 1; DeLeon told him that he only got the job "because [he is] white," *id.*; *see also* D. App. 43-44, and 72; and DeLeon told Cuthbertson that one "can't trust a white committee because the white guys are always out to steal money from the local," D. App. 85.

A reasonable jury could not find that these three comments regarding Caucasians, made over the course of Cuthbertson's more than two months of employment, were sufficiently pervasive or severe to establish a hostile work environment, i.e., that the conduct was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. *See, e.g., Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 342, 348 (5th Cir. 2007) (affirming summary judgment and concluding that African-

---

[4]The court only considers specific allegations of racial hostility because "'conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey*, 286 F.3d at 269 (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).

American plaintiff could not establish hostile work environment based on evidence that, during three-month period, plaintiff's supervisor referred to inner-city children as "ghetto children," expressed surprise on learning that plaintiff shopped at upscale mall, and stated that African-Americans attended night school because they did not qualify for day programs). As in *Turner*, DeLeon made multiple comments, but not so many as to enable a reasonable jury to find that they were pervasive.[5] Because DeLeon's comments regarding Cuthbertson's race did not go "beyond offensive utterances to include physical threats or humiliation,"[6] *Lacy v. Dallas Cowboys Football Club*, 2012 WL 2795979, at *7 (N.D. Tex. July 10, 2012) (Boyle, J.), and were not pervasive or severe, a reasonable jury could not find in Cuthbertson's favor based on this evidence.

Cuthbertson also relies on evidence that DeLeon made derogatory comments about other persons and races. He alleges that when referring to an African-American male, DeLeon said, "being a black guy, he was from the streets," D. App. 107, and that on seven or eight occasions she used the word "n----r" when referring to certain African-American individuals, *id.* at 52. A reasonable jury could not find that such evidence of hostility toward other races establishes hostility toward Cuthbertson based on his Caucasian race. Although

---

[5] Although on one occasion DeLeon referred to Cuthbertson multiple times as a "f---ing stupid white boy," D. App. 72, this occurred when they were involved in a brief, heated argument. When considering the question of pervasiveness, a reasonable jury could only find that this conduct occurred as part of one incident.

[6] Cuthbertson stated in an email to his superior that DeLeon physically threatened him and made several discriminatory comments related to his age. There is no evidence, however, that the physical threats related to any racial comments or were motivated by race.

the Fifth Circuit has not reached a conclusion "regarding how evidence of the workplace environment for one category of employees can be used to support the claims under Title VII for another category," it has held that "if the evidence of the workplace environment for the employees of a plaintiff's race does not show frequent, severe, and pervasive hostility, then evidence of hostility towards a different racial group is not much support for the plaintiff's claim." *Hernandez*, 670 F.3d at 653-54. As in *Hernandez*, evidence of hostility toward a race other than Cuthbertson's that is not "physically threatening or humiliating" toward him and did not "unreasonably interfere[] with [his] work performance . . . [does] not transform what was an otherwise insufficient case of a hostile work environment experienced by [Cuthbertson] into one that could survive summary judgment."[7] *Id.* at 654 (internal quotation marks and citations omitted).

The court therefore concludes that AFGE is entitled to summary judgment dismissing Cuthbertson's race-based hostile work environment claim.

C

AFGE argues that it is entitled to summary judgment on Cuthbertson's sex-based hostile work environment claim because the evidence does not establish that the sexual harassment was severe or pervasive. In response, Cuthbertson cites evidence that DeLeon's "most frequent comments" were: "[a] young white boy like you wouldn't understand;" "I

---

[7] The court "do[es] not consider the various incidents of harassment not based on race" because Cuthbertson "do[es] not have evidence that the alleged non-race-based harassment was part of a pattern of race-based harassment." *Hernandez*, 670 F.3d at 654.

don't think we can work together because you're a man and you don't know how to listen to a woman;" and "I can't trust you because you are a man." P. App. 1. He also cites evidence that DeLeon asked him, "[d]o you think you can work for a woman?" *Id.*[8]

Even viewed in the light most favorable to Cuthbertson, a reasonable jury could not find these comments were so severe as to affect a term, condition, or privilege of Cuthbertson's employment. Cuthbertson alleges that DeLeon made specific statements, but he has failed to offer any specific evidence regarding how often these comments were made. Instead, he asserts that the remarks were "frequent." P. App. 1. The term "frequent," however, is so vague in this context as to be a "conclusory allegation." And a conclusory allegation is "inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Ramsey*, 286 F.3d at 269 (internal quotation marks omitted).

Moreover, although "[u]nder the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim," *EEOC v. WC&M Enterprises, Inc.*, 496 F.3d 393, 400 (5th Cir. 2007), the statements on which Cuthbertson relies are not so severe as to enable a reasonable jury to find the existence of a

---

[8]The summary judgment record contains evidence of two other comments that were *related to* sex but that a reasonable jury could not find were *based on* sex, and thus could not have created a hostile work environment. First, according to the evidence, DeLeon told Cuthbertson that she performed a sexual act to get her job. But there is no context provided that would enable a reasonable jury to infer that this comment was based on Cuthbertson's male sex. Second, DeLeon stated that Cuthbertson had obtained his job because an AFL-CIO officer "pimps off all these white people on the AFGE." D. App. 43-44. Although the term "pimps" has a sexual overtone, a reasonable jury could not infer that this comment was based on Cuthbertson's male sex.

sexually hostile work environment. Title VII's prohibitions do not constitute a "general civility code," and employees must tolerate the "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher*, 524 U.S. at 788 (citations and quotations omitted). A reasonable jury could not find that Cuthbertson was subjected to unwanted advances, graphic language, touching, or "severely offensive remarks." *Nwosu v. Ochsner Med. Ctr. Clinic Found.*, 2011 WL 2470890, at *5 (E.D. La. June 20, 2011). Nor could a reasonable jury find that DeLeon's comments created a sexually hostile work environment. *See, e.g.*, *Hockman*, 407 F.3d at 321-22, and 329 (granting summary judgment for defendant where plaintiff alleged that her supervisor commented on her body, slapped her behind, attempted to kiss her, brushed up against her private areas, and made sexually suggestive comments).

The court therefore concludes that AFGE is entitled to summary judgment dismissing Cuthbertson's sex-based hostile work environment claim.

IV

The court now considers Cuthbertson's retaliation claim.

A

Title VII makes it unlawful "for an employer . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To determine whether Cuthbertson has established his retaliation claim under

Title VII, the court applies the modified *McDonnell Douglas* approach. *See, e.g., Smith v. Xerox Corp.*, 602 F.3d 320, 329-30 (5th Cir. 2010) (holding that retaliation claims under Title VII are subject to mixed-motives test). Under this approach, Cuthbertson must first establish a *prima facie* case of retaliation by demonstrating that "(1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action." *Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19. 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). "If [Cuthbertson] establishes a *prima facie* case, the burden shifts to [AFGE] to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken." *Siddiqui v. AutoZone W., Inc.*, 731 F.Supp.2d 639, 659 (N.D. Tex. 2010) (Fitzwater, C.J.). "This burden is one of production, not of proof." *Id.* (citing *Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009)). If AFGE meets its burden of production, Cuthbertson must offer sufficient evidence to create a genuine issue of material fact "either (1) that [AFGE's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [AFGE's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (third alteration in original) (internal quotation marks and citations omitted).

B

1

AFGE does not dispute that Cuthbertson has established a *prima facie* case of retaliation. Cuthbertson produced evidence that he engaged in a protected activity when he complained to his superior about DeLeon's comments,[9] his employment was terminated, and a causal link existed between the protected activity and his termination.

2

AFGE has met its burden of production by introducing evidence of a nondiscriminatory reason for terminating Cuthbertson's termination. According to this evidence, Pinnock was informed of an oral altercation between DeLeon and Cuthbertson, after which DeLeon telephoned Pinnock to express concern for her safety because Cuthbertson had threatened her life. Pinnock decided to terminate Cuthbertson because he was a new and at-will employee, his reports showed he never worked on the weekend despite Pinnock's requirement that he occasionally do so, and (3) he exhibited anger during their April 2, 2009 meeting, which was the only time Pinnock had met with him, which confirmed her concern for DeLeon's safety.

---

[9]Although the court is granting summary judgment dismissing both of Cuthbertson's hostile work environment claims, a reasonable jury could find that his complaints constitute protected activity because he "had a reasonable belief that [AFGE] was engaged in unlawful employment practices." *Turner*, 476 F.3d at 348 (quoting *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000)).

3

The court now turns to the third element of Cuthbertson's retaliation claim. The parties primarily dispute whether a reasonable jury could find that AFGE's justification is pretextual or whether Cuthbertson's protected activity was a motivating factor in AFGE's decision to terminate him.

Viewing the summary judgment evidence favorably to Cuthbertson, the court holds that a reasonable jury could find that Cuthbertson's complaint was a motivating factor for his termination. Although the temporal proximity between Cuthbertson's seeking to file a formal complaint and his termination cannot by itself establish "but for" causation under either the pretext or mixed-motive framework, *Nunley v. City of Waco*, 440 Fed. Appx. 275, 281 (5th Cir. 2011) (per curiam), it can be considered in conjunction with other factors, *see, e.g.*, *Powers v. Woodlands Religious Cmty., Inc.*, 323 Fed. Appx. 300, 302-03 (5th Cir. 2009) (per curiam). Here, not only did AFGE terminate Cuthbertson approximately six weeks after his original complaint, but the decision to discharge him was made the same day he asked to file a formal complaint against DeLeon.

Cuthbertson's circumstantial evidence enhances the probative value of the temporal proximity. AFGE asserts that Cuthbertson was in part fired for poor performance, including misstating his hours and not working on some weekends. But a reasonable jury could find that his performance was satisfactory. There is evidence in the summary judgment record that, in February, Pinnock sent him emails complimenting his sending along new articles related to the union's work, sharing his experiences at a local meeting, and completing work

promptly. And there is proof that Pinnock never disciplined Cuthbertson before he complained about DeLeon's comments, and that only two weeks before AFGE's termination decision, Pinnock complimented his reports, said she "liked the work she was seeing," and told him he had a future with the union. P. App. 2-3.[10]

Cuthbertson also relies on evidence that Pinnock told him it "was [his] job to get along with Ms. DeLeon and not the other way around," and that "if the two of [them] could not get along with each other, then maybe this was not the job for [him]." P. App. 3.[11] Cuthbertson has also introduced evidence that Pinnock addressed his complaints about DeLeon in a condescending manner. *See Villalon v. Del Mar Coll. Dist.*, 2010 WL 3221789, at *5-7 (S.D. Tex. Aug. 18, 2010) (denying summary judgment based in part on plaintiff's supervisor's "visibl[e] annoy[ance]" and "rude" behavior when plaintiff said she was taking leave under the Family Medical Leave Act). Although AFGE argues that Cuthbertson's termination was due in part to his threatening DeLeon—an assertion that a reasonable jury may choose to believe given his earlier display of anger—there is sufficient evidence for a reasonable jury to find that Cuthbertson's protected status was a "motivating" or "substantial" factor in the

---

[10]Neither party has produced evidence regarding when AFGE was notified about Cuthbertson's not working weekends and misstating his hours on his timesheet.

[11]Cuthbertson also relies on the EEOC's determination that there is "reasonable cause to believe that [Cuthbertson] was discharged in retaliation against his participation in protected activity." P. App. 13. Because the court concludes that the evidence is otherwise sufficient to create a genuine issue of material fact, it need not decide whether the EEOC's determination, of itself or in combination with other summary judgment evidence, is sufficient to do so.

decision to terminate his employment.

Because a reasonable jury could find in Cuthbertson's favor on his retaliation claim, the court denies AFGE's motion in this respect.

\* \* \*

For the reasons explained, the court grants AFGE's motion for summary judgment as to Cuthbertson's hostile work environment claims and denies the motion as to his retaliation claim.

**SO ORDERED.**

September 21, 2012.

                                                _____
                                                SIDNEY A. FITZWATER
                                                CHIEF JUDGE